George C. Lombardi (*pro hac vice*)
glombardi@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone:   (312) 558-5600
Facsimile:    (312) 558-5700

E. Danielle T. Williams (*pro hac vice*)
dwilliams@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone:  (704) 350-7700
Facsimile:    (704) 350-7800

Michael S. Elkin (*pro hac vice*)
melkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Dustin J. Edwards (*pro hac vice*)
dedwards@winston.com
WINSTON & STRAWN LLP
800 Capitol St., Suite 2400
Houston, TX 77002-2925
Telephone:  (713) 651-2600
Facsimile:    (713) 651-2700

Michael A. Tomasulo (SBN: 179389)
mtomasulo@winston.com
Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

*Attorneys for Defendants*
BANK OF AMERICA CORPORATION
and BANK OF AMERICA, N.A.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANTWORKS, LLC, a Delaware limited liability company, and NANT HOLDINGS IP, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA CORPORATION, a Delaware corporation, and BANK OF AMERICA, N.A., a national banking association,<br><br>Defendants. | **Case No. 2:20-cv-07872-GW-PVC**<br><br>**DEFENDANTS BANK OF AMERICA CORPORATION AND BANK OF AMERICA, N.A.'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  January 25, 2021<br>Time:          8:30 A.M.<br>Location:      Courtroom 9D<br>               350 W. 1st Street<br>               Los Angeles, CA 90012<br>Judge:         Hon. George H. Wu<br><br>Complaint Served: August 31, 2020 |

___*PUBLIC-REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL*___

## NOTICE OF MOTION AND MOTION

**TO THE COURT, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 25, 2021 at 8:30 AM, or as soon thereafter as the matter may be heard, in Courtroom 9D of this Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants BANK OF AMERICA CORPORATION and BANK OF AMERICA, N.A. (collectively, "Bank of America") will and hereby do move this Court for an order dismissing Plaintiffs NANTWORKS, LLC and NANT HOLDINGS IP, LLC's (collectively, "NantWorks") copyright, trade secrets, and breach of contract claims from the First Amended Complaint.  ECF No. 40.

Bank of America moves to dismiss these claims from the First Amended Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support of the Motion filed concurrently herewith, the Declaration of E. Danielle T. Williams, the record and the Court file, and any evidence and argument that may be presented at or before the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 20, 2020.

Dated: December 2, 2020

WINSTON & STRAWN LLP

By:*/s/ E. Danielle T. Williams*
George C. Lombardi
Michael S. Elkin
E. Danielle T. Williams
Dustin J. Edwards
Michael A. Tomasulo
Diana Hughes Leiden

*Attorneys for Defendants*
BANK OF AMERICA CORPORATION
and BANK OF AMERICA, N.A.

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................ 2

III.    LEGAL STANDARD .......................................................................... 4

IV.     ARGUMENT........................................................................................ 6

      A.   NantWorks's Allegations and the Assignment Agreement Establish that NantWorks Does Not Own the Copyright and Therefore Lacks Standing.................................................................................................. 6

      B.   NantWorks Impermissibly Combines Distinct Copyright Claims into a Single Cause of Action and Fails to Allege Facts Sufficient to Sustain a Claim for Contributory or Vicarious Infringement............... 9

      C.   NantWorks's Trade Secret Claims Are Untimely. ................................. 11

            1.   NantWorks's CUTSA claim is still untimely because the claim is premised on continuing violations. .................................................... 11

            2.   NantWorks's DTSA claim remains time-barred............................. 13

      D.   NantWorks's Trade Secret Claims are not Pled with Particularity. ........ 14

      E.   The Copyright Act Preempts NantWorks's CUTSA Claim. ................... 18

      F.   NantWorks's Amendments Do Not Change the Fact that Its Breach of Contract Claim Is Preempted as a Matter of Law. .............................. 20

V.      CONCLUSION ................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. City of Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ............................................................................... 5, 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................ 4, 5, 10

*Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*,
   2017 WL 412524 (N.D. Cal. Jan. 31, 2017)............................................................ 17

*Beatport v. SoundCloud*,
   2019 WL 6330680 (C.D. Cal. Apr. 11, 2019)................................................... 15, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................... 4, 5, 10

*Cadence Design Sys., Inc. v. Avant! Corp.*,
   29 Cal. 4th 215 (2002) ............................................................................................ 12

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
   2017 WL 1436044 (N.D. Cal. Apr. 24, 2017)......................................................... 13

*Cobbler Nevada, LLC v. Gonzales*,
   901 F.3d 1142 (9th Cir. 2018) ................................................................................ 10

*Del Madera Props. v. Rhodes and Gardner, Inc.*,
   820 F.2d 973 (9th Cir. 1987) ....................................................................... 2, 19, 21

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   870 F.3d 978 (9th Cir. 2017) .................................................................................... 7

*Emazing Lights LLC v. De Oca*,
   2016 WL 3658945 (C.D. Cal. Jan. 7, 2016)............................................................ 16

*Entous v. Viacom Int'l, Inc.*,
   151 F. Supp. 2d 1150 (C.D. Cal. 2001) ............................................................ 20, 21

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)................................................................................................... 8

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,*
  139 S. Ct. 881 (2019).................................................................................1, 2, 6, 7

*Gabriel Techs. Corp. v. Qualcomm Inc.,*
  857 F. Supp. 2d 997 (S.D. Cal. 2012) ...................................................... 13

*Grange Debris Box & Wrecking Co. v. Super. Ct.,*
  16 Cal. App. 4th 1349 (1993) ................................................................... 13

*HiRel Connectors, Inc. v. United States,*
  465 F. Supp. 2d 984 (C.D. Cal. 2005) ..................................................... 12

*InteliClear, LLC v. ETC Glob. Holdings, Inc.,*
  978 F.3d 653 (9th Cir. 2020) .................................................................... 15

*Invisible Dot, Inc. v. DeDecker,*
  2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) ........................................... 15

*Jobscience, Inc v. CVPartners, Inc.,*
  2014 WL 93976 (N.D. Cal. Jan. 9, 2014)........................................... 15, 19

*Kieu Hoang v. Lang Van, Inc.,*
  2019 WL 6654130 (C.D. Cal. July 1, 2019) .............................................. 9

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005) .................................................................... 8

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994).................................................................................... 5

*Kraft Americas, LP v. Oldcastle Precast, Inc.,*
  2013 WL 12125759 (C.D. Cal. Dec. 18, 2013).......................................... 12

*Laws v. Sony Music Entm't, Inc.,*
  448 F.3d 1134 (9th Cir. 2006) .................................................................. 19

*Leadsinger, Inc. v. BMG Music Publ'g,*
  429 F. Supp. 2d 1190 (C.D. Cal. 2005).................................................... 5

*Luvdarts, LLC v. AT & T Mobility, LLC,*
  710 F.3d 1068 (9th Cir. 2013) .................................................................. 10

*Marshall & Swift/Boeckh, LLC v. URS Corp.,*
  2009 WL 10668449 (C.D. Cal. Aug. 26, 2009) ....................................... 20

*Mattel, Inc. v. MGA Entm't, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................. 15, 16

*Miller v. Rykoff-Sexton, Inc.*,
  845 F.2d 209 (9th Cir. 1988) ..................................................................................... 5

*Nafal v. Carter*,
  388 F. App'x 721 (9th Cir. 2010) ........................................................................... 8, 9

*Nelson Bros. Pro. Real Estate LLC v. Jaussi*,
  2017 WL 8220428 (C.D. Cal. Jun. 27, 2017) ........................................................... 18

*Nguyen v. Bank of Am., NA*,
  563 F. App'x 558 (9th Cir. 2014) ............................................................................... 8

*Pak's Trading Europe B.V. v. Target*,
  2018 WL 8333362 (C.D. Cal. July 5, 2018) ............................................................... 9

*Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*,
  459 F. Supp. 3d 1294 (C.D. Cal. 2020) ..................................................................... 21

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*,
  733 F.3d 1251 (9th Cir. 2013) ..................................................................................... 7

*Silvers v. Sony Pictures Ent'mt Inc.*,
  402 F.3d 881 (9th Cir. 2005) ........................................................................... 6, 7, 8, 9

*Sleep Sci. Partners v. Lieberman*,
  2010 WL 1881770 (N.D. Cal. May 10, 2010) ........................................................... 19

*Stock West, Inc. v. Confederated Tribes*,
  873 F.2d 1221 (9th Cir. 1989) ..................................................................................... 5

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ............................................................................... 2, 18

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
  587 F.3d 1339 (Fed. Cir. 2009) ................................................................................. 17

*Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*,
  2011 WL 281020 (C.D. Cal. Jan. 26, 2011) ............................................................... 6

*Vander Music v. Azteca Int'l Corp.*,
  2010 WL 11519506 (C.D. Cal. Sept. 15, 2010) ......................................................... 10

iv

*Veronica Foods Co. v. Ecklin,*
   2017 WL 2806706 (N.D. Cal. June 29, 2017) ........................................................ 13

*Warren v. Fox Fam. Worldwide, Inc.,*
   328 F.3d 1136 (9th Cir. 2003) ................................................................................ 6

**Statutes**

17 U.S.C.
   § 101 *et seq.* ...................................................................................................*passim*
   § 102 ................................................................................................................... 18
   § 103 ................................................................................................................... 18
   § 106 ............................................................................................................... 8, 18
   § 204(a) ................................................................................................................ 9
   § 301 ................................................................................................................... 20
   § 411(a) ................................................................................................................. 1
   § 501 ..................................................................................................................... 1
   § 501(b) ............................................................................................................ 7, 8

18 U.S.C.
   § 1836 ............................................................................................................ 13, 14
   § 1836 *et seq.* ...............................................................................................*passim*
   § 1839(5)(A)(B) ................................................................................................. 13

Cal. Civ. Code
   § 3426 *et seq.* ...............................................................................................*passim*
   § 3426.6 ........................................................................................................ 11, 12

**Other Authorities**

Fed. R. Civ. P.
   8 ...................................................................................................................... 4, 10
   10(b) ................................................................................................................... 10
   12(b)(1) ............................................................................................................ 5, 6
   12(b)(6) ............................................................................................................ 5, 6

## I.   INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") fares no better than the original Complaint as to the very claims Bank of America moved to dismiss in October 2020. Once again, NantWorks asserts twelve separate claims for relief against Bank of America—patent infringement claims related to eight patents, violation of the Defend Trade Secrets Act ("DTSA"), misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), breach of contract under California and New York law, and copyright infringement.  But NantWorks's second effort does not show entitlement to the relief sought for any of the non-patent claims.

*First*, NantWorks has no standing to bring a claim for copyright infringement. Only the legal or beneficial owner of a copyright is entitled to bring suit.  17 U.S.C. § 501.   And a copyright registration is a prerequisite to bringing a copyright infringement suit.   17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 891 (2019).   The claimant on the only copyright registration asserted is NantMobile LLC—which is not a party to this case.  Plaintiffs assert they have standing based on an assignment; but that agreement conveyed only the ████████████████████████ and not any exclusive rights under the Copyright Act, which is insufficient as a matter of law to confer standing.  NantWorks's copyright claim thus still fails at the outset.  And even if NantWorks had standing to bring any copyright infringement claim, it has failed to allege facts sufficient to sustain a claim for contributory or vicarious infringement.

*Second*, NantWorks's misappropriation of trade secrets claims under both the DTSA and the CUTSA are time-barred.  In an effort to cure the defects in its original Complaint, NantWorks alleges it provided its mobile deposit software containing its trade secrets to Bank of America in 2013, and Bank of America allegedly misappropriated these trade secrets in 2014, 2015, 2016, 2017 and 2018.  The FAC, however, makes clear NantWorks provided no alleged trade secrets to Bank of America after 2013.  Because the alleged first use in 2014 triggered the statute of limitations, and

1

1  any misappropriation thereafter was merely "continuing use," NantWorks's addition of

2  more years of purported use fails to cure its original pleading defect.    Thus,

3  NantWorks's DTSA claim and CUTSA claim remain time-barred.

4        *Third*, NantWorks still fails to plead its trade secret claims with the requisite

5  particularity. This time, NantWorks alleges its software includes "proprietary

6  algorithms and information relating to digital image recognition and processing

7  systems," and that this information is "secret" because NantWorks removed the

8  unspecified secret portions of the software from the copy of the Advanced Mobile

9  Deposit Software deposited with the Library of Congress.  As this District has held,

10  these allegations do not meet the pleading requirements because they do not identify

11  the trade secrets with particularity or allege how they are supposedly secret.

12        *Fourth*, the Copyright Act preempts both NantWorks's claim for

13  misappropriation of trade secrets under CUTSA and its breach of contract claim.

14  Preemption applies when the subject matter and rights in trade secrets are coextensive

15  with a copyright.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150

16  (9th Cir. 2008).  The same principle is true for breach of contract claims.  *See Del*

17  *Madera Props. v. Rhodes and Gardner, Inc*., 820 F.2d 973, 977 (9th Cir. 1987).

18  NantWorks's CUTSA claim and its breach of contract claim are based on the same

19  nucleus of facts as its copyright infringement claim—namely, use of NantWorks's

20  Advanced Mobile Deposit Software Software—and are therefore preempted by federal

21  copyright law.

22        As explained in more detail below, even accepting any factual allegations as true,

23  one cannot draw a reasonable inference that Bank of America is liable for any of the

24  non-patent claims NantWorks asserts.    Accordingly, the Court should dismiss

25  NantWorks's claims for copyright infringement, misappropriation of trade secrets, and

26  breach of contract with prejudice.

27  **II.    FACTUAL BACKGROUND**

28        According to the FAC, NantWorks's claims relate to image recognition

2

technology IPPLEX developed and NantWorks allegedly acquired in August 2010. FAC ¶¶ 17, 19.   NantWorks alleges Bank of America misappropriated its image recognition technology for use in its own mobile check deposit product.  *Id.* ¶¶ 13, 34–37.

The FAC alleges that after a Bank of America executive observed a demonstration of NantWorks's technology at a conference in April 2010, NantWorks contractually agreed to share its technology for purposes of evaluating potential use in Bank of America's mobile check deposit product.  *Id.* ¶¶ 21–24.   As part of the evaluation, NantWorks provided Bank of America with demonstration applications containing mobile check deposit technology in 2012.  *Id.* ¶ 27.   NantWorks further alleges that despite Bank of America's releasing its own commercial mobile check deposit software in July 2012, Bank of America continued to express interest in implementing NantWorks's technology, and in early 2013 NantWorks shared additional information about its technology, including developer manuals and header files.  *Id.* ¶¶ 29–31.   NantWorks theorizes that this information allowed Bank of America to incorporate NantWorks's mobile check deposit technology into its own mobile checking application. *Id.* ¶ 31, 36. According to NantWorks, when the relationship and evaluation period ended in 2013, NantWorks believed that Bank of America had decided to develop its own mobile check deposit technology.  *Id.* ¶ 33.

Nearly five years later, in the Spring of 2018, NantWorks allegedly discovered that Bank of America purportedly accessed NantWorks's mobile deposit software after the parties' collaboration ended in 2013.  *Id.* ¶ 34.   Specifically, the FAC states that NantWorks investigated a "software development database" previously used for testing and debugging of NantWorks's mobile check deposit software.  *Id.*   During this investigation, NantWorks purportedly found "reports" including information regarding when and from what networks NantWorks's software was used.  *Id.*   NantWorks claims that several reports of the software's use originated from Bank of America after the parties' collaboration ended in 2013.  *Id.* ¶ 35.

The FAC alleges that "[u]pon information and belief," Bank of America used NantWorks mobile check deposit software "hundreds of times during 2014, 2015, 2016, 2017 and 2018." *Id.* ¶ 36.  But the FAC identifies only one specific example of such an alleged use of NantWorks's software: "following the 2014 unauthorized use of NantWorks'[s] mobile check deposit software as reflected in the development database, [Bank of America] implemented automatic image capture and confirmation features, which were developed by NantWorks and found in NantWorks'[s] proprietary mobile check deposit software." *Id.* ¶ 37.  The FAC further alleges that "[t]he software development database continued to receive reports into the Spring of 2018," but identifies no specific reports, and does not allege that Bank of America is associated with these later-received reports. *Id.* ¶ 38.  NantWorks's copyright, trade secret, and breach of contract claims are based on its "Advanced Mobile Deposit Software," which it defines to include "source code, object code, and libraries for the mobile check deposit software." *Id.* ¶¶ 189, 205, 215.

Based on these allegations, NantWorks brings claims for patent infringement (Counts I–VIII), copyright infringement (Count IX), violation of the Defend Trade Secrets Act (Count X), misappropriation of trade secrets under California law (Count XI), and breach of contract under California and New York law (Count XII).

## III.   LEGAL STANDARD

Rule 8(a)(2) requires that a pleading contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a complaint need not include detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Accordingly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotations omitted). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading which fails to state a claim upon which relief can be granted must be dismissed. *Twombly*, 550 U.S. at 570.

Dismissal is appropriate under Rule 12(b)(1) when the court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). Although lack of subject matter jurisdiction is an affirmative defense, the burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction, and the court will presume a lack of jurisdiction until the pleader proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Although a motion to dismiss may be granted with leave to amend, "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint" as here. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (finding district court did not abuse its discretion in dismissing action with prejudice). Furthermore, leave to amend is not required where "any amendment would be futile." *Leadsinger, Inc. v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1197 (C.D. Cal. 2005); *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), overruled on other grounds by *Iqbal*, 556 U.S. 662 (citation omitted) (futility means that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense").

## IV.   ARGUMENT

**A.   NantWorks's Allegations and the Assignment Agreement Establish that NantWorks Does Not Own the Copyright and Therefore Lacks Standing.**

The FAC establishes NantWorks does not own the copyright to Advanced Mobile Deposit Software and therefore lacks standing to assert a claim for copyright infringement.  NantWorks's FAC also establishes NantWorks has no registration to the copyright at issue, a statutory prerequisite to filing suit.  *Fourth Estate*, 139 S. Ct. at 891.  Either defect is fatal to NantWorks's copyright claim pursuant to Rules 12(b)(1) and 12(b)(6).  *See Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (Rule 12(b)(1) motion appropriate to attack standing under the Copyright Act); *Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*, 2011 WL 281020, at *6 (C.D. Cal. Jan. 26, 2011) (dismissing copyright claim for lack of standing under Rule 12(b)(6).  And while NantWorks alleges NantMobile LLC assigned its ownership rights to NantWorks, the assignment agreement incorporated by reference into the FAC reveals that NantMobile ███████████████████████████ which is insufficient to establish statutory standing.  *See Silvers v. Sony Pictures Ent'mt Inc.*, 402 F.3d 881, 890 (9th Cir. 2005).

NantWorks alleges that "source code, object code, and libraries for NantWorks'[s] Advanced Mobile Deposit Software v. 1.0 are original literary works of authorship by NantWorks employed programmers" are entitled to copyright protection. FAC ¶ 190.  The FAC included a Copyright Registration No. TX0008852717 for a Computer File titled "Advanced Mobile Deposit v. 1.0," created in "2013" and published on January 1, 2013.  *Id.* Ex. I, at 2.  The copyright claimant is NantMobile LLC.  *Id.*  NantWorks alleges that it "owns and has a valid copyright in the NantWorks'[s] Advanced Mobile Deposit Software v. 1.0."  *Id.* ¶ 188.  NantWorks alleges that its subsidiary "NantMobile assigned its ownership rights in the

NantWorks'[s] Advanced Mobile Deposit Software v. 1.0 to NantWorks prior to the filing of this action." *Id.*  NantWorks further alleges that Bank of America copied, publicly displayed, and distributed products derived from NantWorks's Advanced Mobile Deposit Software, and that Bank of America's products are substantially similar to NantWorks's software. *Id.* ¶¶ 194-95.

But under the Copyright Act of 1976, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b); *see Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).  The plaintiff carries the burden of establishing a qualifying ownership interest, "both as a substantive element of the infringement claim, [] and as a necessary predicate for standing to bring the claim." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017) (citations omitted).

In addition, registration of the copyright claim is a statutory prerequisite to filing suit for copyright infringement.  *Fourth Estate*, 139 S. Ct. at 887 ("registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights.").

Here, NantMobile is the registrant of a copyright for Advanced Mobile Deposit v 1.0 – not either of the Plaintiffs.  FAC, Ex. I, at 1.

---

**Advanced Mobile Deposit v 1.0.**

**Type of Work:** Computer File
**Registration Number / Date:** TX0008852717 / 2020-03-05
**Application Title:** Advanced Mobile Deposit v 1.0.
**Title:** Advanced Mobile Deposit v 1.0.
**Description:** Electronic file (eService)
**Copyright Claimant:** NantMobile LLC. Address: 9920 Jefferson Blvd., Culver City, CA, 90232, United States.

---

But NantMobile is not a plaintiff in this case.  And the assignment agreement shows NantMobile conveyed only ███████████████████

and not any of the enumerated exclusive rights under Section 106 of the Copyright Act.[1]
*See* Williams Decl., Ex. 1, § 1.1 ("██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████").   In a case directly on point, the Ninth Circuit held that "the bare assignment of an accrued cause of action" is insufficient to create standing to sue as the "owner of an exclusive right" as set forth in Section 501(b) of the Copyright Act because it does not convey any of the exclusive rights under a copyright. *Silvers*, 402 F.3d at 890.

Because the assignment is insufficient to create standing for NantWorks to sue under *Silvers*, NantWorks lacks standing to bring a copyright claim and has initiated this lawsuit without a copyright registration.   Both are independent grounds for dismissal. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Nafal v. Carter*, 388 F. App'x 721, 723 (9th Cir. 2010) ("the assignment documents at issue here did not actually grant Plaintiff an ownership interest in an exclusive copyright license. Rather, the documents were a disguised assignment of a cause of action

---

[1]  The Court may consider the assignment agreement, which is attached to the Declaration of E. Danielle T. Williams as Exhibit 1, because NantWorks incorporated it by reference into the FAC and NantWorks's copyright claim depends on it. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("incorporation by reference" doctrine extends "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint") (internal citation omitted).   The Court may consider it for the independent reason that the assignment agreement's terms conflict with NantWorks's ownership allegations. *Nguyen v. Bank of Am., NA*, 563 F. App'x 558, 558 (9th Cir. 2014) (rejecting "allegations [] contradicted by other sections of the complaint, as well as the exhibits [] attached to it"—"when an exhibit to a complaint is inconsistent with the complaint's allegations, the exhibit controls") (citation omitted).

prohibited under [*Silvers*]").[2]

Courts do not hesitate to dismiss copyright claims where the plaintiff's allegations fail to establish ownership and standing. For example, in *Pak's Trading Europe B.V. v. Target*, 2018 WL 8333362, at *7 (C.D. Cal. July 5, 2018), the court granted the defendant's motion to dismiss where the plaintiff's copyright claim relied on a registration that listed a different entity as the claimant and "the [p]laintiff [did] not allege any facts showing that [the separate entity] granted [the plaintiff] any exclusive rights in the copyright at issue." *See also Kieu Hoang v. Lang Van, Inc.*, 2019 WL 6654130, at *4 (C.D. Cal. July 1, 2019) (dismissing the plaintiff's copyright claim because the plaintiff did "not adequate[ly] [] establish standing at the pleading stage" where it was assigned ownership rights from a separate entity listed as the owner on the copyright registration).

Because NantWorks is not the claimant on the copyright registration and "the assignment document[] at issue here did not actually grant Plaintiffs an ownership interest," NantWorks lacks statutory standing to sue and the claim should be dismissed. *Nafal*, 388 F. App'x at 723.

### B. NantWorks Impermissibly Combines Distinct Copyright Claims into a Single Cause of Action and Fails to Allege Facts Sufficient to Sustain a Claim for Contributory or Vicarious Infringement.

Even assuming NantWorks had standing to bring a copyright infringement claim at all, this claim fails for the additional reason that the FAC impermissibly lumps together three distinct copyright claims into a single cause of action. Furthermore, NantWorks's conclusory allegations are insufficient to state a claim for either contributory or vicarious copyright infringement.

---

[2] To the extent that NantWorks is relying on any other assignment to prove ownership rights, this assignment must be in writing under Section 204(a) of the Copyright Act. 17 U.S.C. § 204(a)) ("A transfer of copyright ownership, other than by operation of law, is not valid unless . . . the transfer[] is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.").

NantWorks alleges that "users of BoA's mobile application must have obtained and used" NantWorks's copyrighted software by accessing Bank of America's mobile banking application, and therefore that "BofA has thus induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing and assisting others to use, copy, publically [sic] display, and distribute" NantWorks's software. FAC ¶ 197. NantWorks alleges that therefore Bank of America has engaged in "direct, contributory, and/or vicarious copyright infringement." *Id*. ¶ 198. Because NantWorks fails to "separately identify or describe the causes of action … to determine whether each cause of action is for direct, contributory, or vicarious infringement," the claim must be dismissed. *Vander Music v. Azteca Int'l Corp.*, 2010 WL 11519506, at *2 (C.D. Cal. Sept. 15, 2010) (dismissing copyright claim where the pleading "lumps all of its causes of action in a single paragraph in violation of Federal Rules of Civil Procedure 10(b) and 8(a)(2)"); *see also* Fed. R. Civ. P. 10(b) (a complaint must state "claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").

Even setting aside this pleading defect, the FAC is devoid of any factual allegations that could sustain a claim for either contributory or vicarious copyright infringement. A contributory infringement occurs when the defendant, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1147 (9th Cir. 2018) (citation omitted). And a vicarious infringement claim must allege that the defendant had both the (1) "'right and ability to supervise the infringing activity' and (2) 'a direct financial interest' in the activity." *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (citation omitted). The FAC merely parrots the elements of a contributory infringement claim and lacks even *conclusory* allegations that Bank of America engaged in vicarious infringement. This is insufficient to state a claim. *Twombly*, 550 U.S. at 544; *Iqbal*, 129 S. Ct. at 1949 (court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements...”).  Therefore, if the claim is not dismissed on standing grounds, the Court should find that NantWorks has failed to allege a claim for secondary copyright infringement.

**C.    NantWorks's Trade Secret Claims Are Untimely.**

NantWorks's trade secret claims under both the DTSA and CUTSA are untimely and should be dismissed with prejudice.  According to the FAC, from 2010 to 2013, NantWorks provided Bank of America access to NantWorks's mobile deposit software and other materials allegedly containing NantWorks's trade secrets, and NantWorks provided these alleged trade secrets pursuant to confidentiality provisions in various agreements the parties executed in 2010, 2011, and 2013.  FAC ¶¶ 23-32; 206.  Bank of America allegedly misappropriated these trade secrets in 2014 and continued misappropriating these same trade secrets through 2018.  *Id.* ¶ 36.  Bank of America allegedly improperly incorporated these trade secrets in the "commercially available versions of its mobile check deposit software that BoA has provided to its customers from 2014 to the present." *Id.* ¶¶ 207, 217.  Here, the alleged first misappropriation in 2014 triggered the statute of limitations, and any misappropriation after that was "a continuing misappropriation constitut[ing] a single claim."  Thus, NantWorks's trade secret claims are untimely and must be dismissed with prejudice.

**1.    NantWorks's CUTSA claim is still untimely because the claim is premised on continuing violations.**

The Court should dismiss NantWorks's CUTSA claim as untimely because it was brought outside of the three-year statute of limitations.  A claim for trade secret misappropriation under CUTSA must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.  Cal. Civ. Code § 3426.6.

NantWorks attempts to avoid the statutory bar by alleging Bank of America misappropriated the alleged trade secrets "hundreds of times during 2014, 2015, 2016, 2017 and 2018" and incorporated those trade secrets into its product from 2014 to the

present. FAC ¶ 217. Under California Civil Code section 3426.6, however, these allegations do not avoid the statutory bar because the law expressly rejects a continuing tort theory for misappropriation of trade secrets for the purposes of the statute of limitations, providing that "a continuing misappropriation constitutes a single claim." Cal. Civ. Code § 3426.6. As the California Supreme Court confirmed, "the continued improper use or disclosure of a trade secret after defendant's initial misappropriation is viewed . . . as part of a single claim of continuing misappropriation accruing at the time of the initial misappropriation." *See Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 218 (2002). In expressly rejecting the "continuing wrong approach to the statute of limitations," the California Supreme Court observed that a *misappropriation* occurs "with each misuse or wrongful disclosure of the secret" while a *claim for misappropriation* of a trade secret "arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation." *Id*. at 222.

This applies to both "separate misappropriations of related trade secrets" and "multiple misappropriations of a single secret"; in both instances, a single claim arises on "the date of the initial misappropriation." *HiRel Connectors, Inc. v. United States*, 465 F. Supp. 2d 984, 989–91 (C.D. Cal. 2005).

Here, NantWorks alleges it provided Bank of America access to the trade secrets at issue between 2010 and 2013, and Bank of America continuously misappropriated those same trade secrets from 2014 to 2018. Thus, NantWorks is alleging a single *claim* consisting of multiple alleged *misappropriations*. Regardless whether this is characterized as "separate misappropriations of related trade secrets" or "multiple misappropriations of a single secret," the claim indisputably arose in 2014, the date of the alleged initial misappropriation. *Id.* ¶¶ 207, 217; *HiRel* at 988–89. Under California law, the alleged misappropriation in 2014 triggered the statute of limitations for NantWorks's entire claim and the allegations of subsequent access of those same trade secrets, or related trade secrets, do not give rise to new claims. *Id*.; *see also Kraft Americas, LP v. Oldcastle Precast, Inc.*, 2013 WL 12125759, at *14 (C.D. Cal. Dec.

18, 2013) ("contention that [Defendant] continued improperly to use [Plaintiff's] trade secrets . . . does not have any effect on the limitations period"); *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012) (first alleged misappropriation triggered statute of limitations for entire claim where "all of Plaintiffs' purported trade secrets were allegedly shared in the same time period and in connection with the same relationship").

In short, the FAC makes clear that the alleged trade secret claim arose in 2014, and has been time-barred since 2017, when the three year statute of limitations expired. Because the FAC does not allege that NantWorks was unable to discover the alleged misappropriations earlier, or that it exercised reasonable diligence, the claim should be dismissed, with prejudice. *Grange Debris Box & Wrecking Co. v. Super. Ct.*, 16 Cal. App. 4th 1349, 1360 (1993) (to avoid dismissal "plaintiff must plead facts which show an excuse, tolling, or other basis for avoiding the statutory bar").

### 2. NantWorks's DTSA claim remains time-barred.

NantWorks's DTSA claim must also be dismissed because the three-year statute of limitations has long since passed.  Under the Act, "misappropriation" consists of (a) "acquisition of a trade secret" by a person who knows or should know the secret was improperly acquired or (b) "disclosure or use of a trade secret of another without express or implied consent."  18 U.S.C. § 1839(5)(A)(B); *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc*., 2017 WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017).  Similar to the CUTSA, a civil action under the DSTA "may not be commenced later than 3 years after the date on which the misappropriation . . . is discovered or by the exercise of reasonable diligence should have been discovered."  18 U.S.C. § 1836.  The statute further provides that "a continuing misappropriation constitutes a single claim of misappropriation." *Id*.

The DTSA applies only to "any misappropriation of a trade secret ... for which any act occurs on or after [May 11, 2016,] the date of the enactment of [the] Act."  *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *13 (N.D. Cal. June 29, 2017)

(citation omitted).  The FAC alleges that Bank of America used NantWorks's mobile check deposit software "hundreds of times during 2014, 2015, *2016*, *2017* and 2018." *Id.* ¶ 36 (emphasis added).  The FAC further alleges that at all times from 2014 to the present, the "commercially available" mobile check deposit software Bank of America provided its customers improperly incorporated NantWorks's alleged trade secrets, and that this software was publicly displayed and freely distributed to Bank of America's customers.  *Id.* ¶¶ 194-95*,* 207, 217.  In other words, according to NantWorks's own allegations, from 2014 to 2018, Bank of America continuously misappropriated the alleged trade secrets NantWorks made available to Bank of America in the 2010 to 2013 time period.  *Id.* ¶¶ 207, 217.  Thus, because the alleged violations were ongoing at all times, any claim under the DTSA would have arisen, if at all, on or around May 11, 2016, the date of the DTSA was enacted.

NantWorks did not file its complaint until August 2020, well after the statute of limitations had run.  Thus, the claim is time-barred.  Nor can NantWorks avoid the time bar by alleged ongoing misappropriations because the DSTA (like the CUTSA) only allows for a single claim for misappropriation.  18 U.S.C. § 1836.  And as explained above, NantWorks should have discovered the alleged trade secret violations long ago, and certainly should have been aware of them before August 2017.  Thus, the FAC itself establishes both the DTSA and CUTSA claims are time-barred and should be dismissed with prejudice.

### D.    NantWorks's Trade Secret Claims are not Pled with Particularity.

NantWorks's trade secret claims are further deficient because NantWorks failed to identify the alleged trade secrets with particularity.  The failings are especially egregious given that NantWorks makes no effort to distinguish the supposed trade secrets relating to its mobile check technology from the admittedly public information regarding that same technology contained in NantWorks's copyright registration and issued patents.

In a trade secret case under both the DTSA and CUTSA, a plaintiff must

14

"describe the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *4 (C.D. Cal. Feb. 6, 2019) (citation omitted). Neither a "laundry list" of all possible trade secrets nor a "conclusory and generalized" allegation regarding the plaintiff's secrets is sufficient. *Id*. at *5; *see also Beatport v. SoundCloud*, 2019 WL 6330680, at *1 (C.D. Cal. Apr. 11, 2019).

Here, NantWorks identifies its alleged trade secrets as "relating to digital image recognition and processing systems" and "includ[ing] proprietary algorithms and information relating to digital image recognition and processing systems, embodied, described and performed in software, documentation, and code, including but not limited to any version of NantWorks' Advanced Mobile Deposit Software v. 1.0." FAC ¶¶ 202, 212. But this is no description at all. NantWorks's allegations are insufficiently specific and fail to identify a trade secret so as to state a claim under DTSA and CUTSA for the following reasons.

First, NantWorks's description of its trade secret consists of vague, catchall phrases or generic categories—"algorithms" and "information"—without providing any particularity to distinguish the alleged secret from general knowledge in the trade. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020). Courts have rejected similar descriptions as insufficiently specific to allege a trade secret. *See, e.g.*, *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) (holding insufficient allegations of "source code . . . and other information related to the development of [plaintiff's] price-optimization software"); *Jobscience, Inc v. CVPartners, Inc*., 2014 WL 93976, at *5 (N.D. Cal. Jan. 9, 2014) (rejecting allegations of "proprietary software applications" and "software code, methods and other trade secrets" (internal quotation omitted)); *Mattel, Inc. v. MGA Entm't, Inc*., 782 F. Supp. 2d 911, 970 (C.D. Cal. 2011) (rejecting allegations of

15

"information concerning the 'OMNI[] order management system,'" a commercially available product).

Second, NantWorks's allegations in the FAC fail to provide sufficient detail "to ascertain at least the boundaries within which the secrets lie" or "to provide reasonable guidance in ascertaining the scope of appropriate discovery," required at the pleading stage. *Beatport*, 2019 WL 6330680, at *1. NantWorks's trade secrets claim is based on NantWorks's Advanced Mobile Deposit Software, the same software which forms the basis of NantWorks's copyright infringement claim. *See* FAC ¶¶ 187–89. To avoid the obvious implications of the fact that NantWorks submitted to the Copyright Office a deposit copy of the Software on the secrecy of its purported trade secrets, NantWorks alleges that it "did not include in the deposit the portions of code relating to its Advanced Mobile Deposit Software v. 1.0 that included proprietary algorithms, source code, object code and libraries containing NantWorks'[s] trade secrets." *Id.* ¶¶ 205, 215. NantWorks provides no further detail, and thus leaves it up to Bank of America and the Court to parse which parts of its Software constitute a trade secret and which do not.

But "[a] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]." *Mattel*, 782 F. Supp. 2d at 967–68 (alteration in original). Without providing more detail distinguishing its trade secret from the publicly available portions of its Advanced Mobile Deposit Software, NantWorks provides no guidance on the boundaries within which the secrets lie. *See id.* at 970 (explaining that "California requires that a trade secret be alleged with particularity" because "vague description preclude[] the Court from effectively" evaluating the claim).[3]

---

[3] Moreover, NantWorks describes its alleged trade secret as "including, but not limited to any version" of its Software—language this District has expressly rejected as insufficient specific to identify a trade secret at the pleading stage. *See e.g.*, *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016) (finding that defendant's trade secret described with the phrase "includ[ing], but ... not limited to"

Similarly, NantWorks does not distinguish the supposedly secret information regarding its software from the admittedly public information about that same software in its eight asserted patents. Between January 2010 and April 2014, each of these eight patents was published and therefore was in the public domain.  FAC Exs. A-G.  It is axiomatic that any confidential information in these patents could no longer be a subject of a trade secret claim after they were published.  *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) ("Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and the patentee's only protection is that afforded under the patent law.").  By April 2014, all trade secret rights to information disclosed in the patents were extinguished. Not only does the FAC not differentiate the supposedly secret portions of its software from the admittedly public information in its patents, but also it alleges ***they are one and the same***.  As to each of the eight asserted patents, the FAC alleges that "BoA directly and wrongfully appropriated and incorporated NantWorks'[s] confidential image recognition and processing technology" and that "NantWorks owned patent rights covering the appropriated technology."  *Id.* ¶¶ 69, 85, 100, 115, 139, 146, 163, 180.  In other words, the "confidential image recognition and processing technology" that Bank of America allegedly misappropriated is the subject of the very patents that NantWorks is asserting.  It was incumbent on NantWorks to identify trade secrets that were actually secret when an actionable misappropriation occurred.  *Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017) (dismissing DTSA claim where alleged trade secrets were published before DTSA was enacted).  But the FAC does not identify the alleged trade secrets and certainly does not distinguish those supposed secrets from the information in its patents that had become available by April 2014. Thus, because the FAC does not distinguish its trade secrets from the admittedly public information in its patents, it should be dismissed for failing

---

was "meaninglessness," because "[a]ny piece of information could potentially be labeled as a trade secret under this definition").

to assert trade secrets that were, in fact, secret.

Lastly, NantWorks's allegations of access between 2014 and 2018 are impermissibly vague.  In *Nelson Bros. Pro. Real Estate LLC v. Jaussi*, 2017 WL 8220428, at *7 (C.D. Cal. Jun. 27, 2017), this District rejected strikingly similar allegations that the defendant "'has continued to use the [] confidential and proprietary [] secrets in marketing efforts and has obtained further transactions as a result of such improper usage,'" because those allegations "provide[d] no specific allegations that the Defendants used the alleged trade secrets after the DTSA was enacted on May 11, 2016."  *Id.*  As such, this District held "[t]he general allegation that Defendants continued to use the alleged trade secrets after [2014] is insufficient to state a claim under the DTSA."  *Id.*  Similarly, here, NantWorks's vague allegations that Bank of America accessed the data after 2014 are simply insufficient.

Accordingly, because the FAC fails to identify a trade secret with sufficient particularity, NantWorks fails to state a claim under the DTSA and CUTSA.

## E.    The Copyright Act Preempts NantWorks's CUTSA Claim.

The Court should dismiss NantWorks's CUTSA claim because the Copyright Act preempts it.  "For the Copyright Act to preempt a state law, two conditions must be satisfied: (1) the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103 and (2) 'the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act."  *Sybersound Records*, 517 F.3d at 1150 (citation omitted).  Here, both requirements are met.

First, the content of the alleged protected trade secret falls within the subject matter of copyright, namely "proprietary algorithms and information relating to digital image recognition and processing systems, *embodied, described and performed in software, documentation, and code, including but not limited to any version of NantWorks'[s] Advanced Mobile Deposit Software*."  FAC ¶ 202 (emphasis added).  NantWorks's CUTSA claim is based on the Advanced Mobile Deposit Software—the

18

same software which forms the basis of NantWorks's copyright infringement claim and for which NantWorks attaches a registration for version 1 to the FAC.  *See* FAC ¶ 205 (describing the alleged trade secrets as "relating to [the] Advance Mobile Deposit Software v. 1.0 copyright"); *see also id.* Ex. I.  NantWorks has claimed copyright protection and trade secret protection over the same subject matter, thus satisfying the first requirement for preemption.

Second, NantWorks's CUTSA claim asserts a right equivalent to the exclusive rights contained in section 106 of the Copyright Act, and does not allege any "extra element" that would "transform the nature of the action" such that it is "qualitatively different" from a copyright infringement claim.  *See Del Madera Props.*, 820 F.2d at 977; *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1144 (9th Cir. 2006).  Where a state law trade secrets claim is based on "the same nucleus of facts" as a copyright infringement claim, the Copyright Act preempts the trade secrets claim.  *See Jobscience*, 2014 WL 93976, at *4.

Here, NantWorks's CUTSA claim is also based on the same nucleus of facts as its copyright infringement claim: NantWorks alleges misappropriation of a "trade secret" related to the same software which NantWorks alleges is protected by copyright, and both claims rely on the same alleged wrongful act, namely access of NantWorks's software and the incorporation of it into Bank of America's own mobile banking application.  FAC ¶¶ 202, 205.  And NantWorks has not made any efforts to show that its CUTSA claim contains any "extra element" to avoid preemption.  Indeed, as set forth above, NantWorks has failed to even allege the existence of a trade secret—much less plead specific material that was misappropriated that is not subject to copyright protection.  *Sleep Sci. Partners v. Lieberman*, 2010 WL 1881770, at *9 (N.D. Cal. May 10, 2010) (holding that the plaintiff "must plead clearly . . . and must aver what has been misappropriated that is not subject to copyright protection or allege a cause of action with an extra element that distinguishes the rights asserted from those provided under the Copyright Act").  NantWorks had a second opportunity to show why its trade

19

secret claim contains an "extra element" to avoid preemption, but it has again failed to do so.

Accordingly, the Copyright Act preempts NantWorks's CUTSA claim warranting its dismissal.

### F.    NantWorks's Amendments Do Not Change the Fact that Its Breach of Contract Claim Is Preempted as a Matter of Law.

Likewise, the Copyright Act preempts NantWorks's breach of contract claim. Despite the opportunity to amend its Complaint, NantWorks's breach of contract claim still relies on the same purported unauthorized copying and use of NantWorks's software underlying its copyright infringement claim.  NantWorks has not alleged any "extra element" to avoid preemption. *See Marshall & Swift/Boeckh, LLC v. URS Corp.*, 2009 WL 10668449, at \*19 (C.D. Cal. Aug. 26, 2009) ("[b]ecause the same conduct that underlies [plaintiff's] breach-of-express-contract claim serves as the basis for its copyright claims, the right that [plaintiff] seeks to vindicate through its contract claim is equivalent to the exclusive rights of reproduction and distribution protected by the Copyright Act.").

A breach of contract claim is preempted if (1) the work is within the subject matter of copyright, and (2) the asserted state law right is "equivalent to any exclusive rights within the scope of federal copyright." *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1158–59 (C.D. Cal. 2001) (citation omitted); *see also* 17 U.S.C. § 301.  Here, NantWorks's breach of contract claim is based on the alleged unauthorized use of its "trade secrets and other confidential information" disclosed to Bank of America pursuant to the Agreements.  FAC ¶¶ 223–25.  The substance of this claim in the FAC remains unchanged from the original Complaint and still relies on the same nucleus of facts as NantWorks's copyright claim: that Bank of America breached the confidentiality and collaboration agreements by using NantWorks's software.  Other than the copyrightable portions of NantWorks's software and the alleged "trade secrets" contained therein—which, as discussed, are covered by the Copyright Act—the FAC

20

identifies no other "confidential information" exchanged between the parties.  And even if it did, courts have held that "ideas and concepts" are considered within the subject matter of copyright for preemption purposes.  *See Entous*, 151 F. Supp. 3d at 1159 (citing cases).

Moreover, the breach of contract claim is preempted because the right NantWorks seeks to enforce through its claim is equivalent to the right available under the Copyright Act.  *See Del Madera Props.*, 820 F.2d at 977 (to avoid preemption, the state claim must have an "'extra element' which changes the nature of the action").  The FAC alleges that, under the Agreements, the parties agreed that any disclosed information "shall remain the property of the originating party," and that Bank of America was permitted to use the information "only for the purposes of evaluating the proposed business venture."  FAC ¶ 222.  Thus, the FAC alleges only that the Agreements protected against unauthorized reproduction or use, and therefore does not prohibit any conduct beyond that already prohibited by the Copyright Act.  *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, 459 F. Supp. 3d 1294 (C.D. Cal. 2020) ("[W]hen a contract does no more than promise not to infringe on copyrighted works, claims stemming from its breach are preempted.").  Simply put, the breach of contract claim does not add any "extra element" beyond the alleged misappropriation underlying NantWorks's copyright infringement, and thus the Copyright Act preempts the breach of contract claim.

## V.   CONCLUSION

For the foregoing reasons, Bank of America respectfully requests that the Court grant its Motion to Dismiss. Because NantWorks has already had two chances to allege its copyright infringement, DTSA, CUTSA, and breach of contract claims, these claims should be dismissed with prejudice.  *See Allen*, 911 F.2d at 373 (finding district court did not abuse its discretion in dismissing action with prejudice where the plaintiff had multiple chances to allege plausible claims).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: December 2, 2020          WINSTON & STRAWN LLP


By:/s/ E. Danielle T. Williams
    George C. Lombardi
    Michael S. Elkin
    E. Danielle T. Williams
    Dustin J. Edwards
    Michael A. Tomasulo
    Diana Hughes Leiden

    *Attorneys for Defendants*
    BANK OF AMERICA CORPORATION
    and BANK OF AMERICA, N.A.